[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10778

_____

D. C. Docket No. 1:09-cr-20591-PAS-1

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 29, 2011
JOHN LEY
CLERK

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

GERMAN PEREZ,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 29, 2011)

Before EDMONDSON and MARCUS, Circuit Judges, and LAWSON,* District
Judge.

PER CURIAM:

Appellant German Perez pled guilty to Counts One and Two of a five count

_____

*Honorable Hugh Lawson, United States District Judge for the Middle District of
Georgia, sitting by designation.

indictment. Count One charged that Perez knowingly, and with the intent to defraud, produced, used, and trafficked in one or more counterfeit access devices, namely, counterfeit credit cards, in violation of 18 U.S.C. §§ 1029(a)(1) and (2). Count Two charged Perez with aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). Perez was sentenced to 12 months on Count One and a consecutive prison term of 24 months on Count Two.

Perez challenges his sentence on three grounds. First, he argues that the district court erred in applying a two-level increase under U.S.S.G. § 2B1.1(b)(10). Second, he argues that there was not sufficient evidence to support the § 2B1.1(b)(10) sentencing enhancement. Finally, he argues that the district court erred in holding him responsible for the total loss amount.

Finding no error, we affirm.

## I.

At his change of plea hearing, Perez admitted the following facts. On June 24, 2009, agents of the United States Secret Service placed a controlled call to Perez with the assistance of a cooperating informant ("CI"). In that call, the CI and Perez arranged to conduct credit card fraud. On June 26, 2009, Secret Service agents searched the CI to ensure that he had no counterfeit credit cards and placed an audio recording device on his person. After that, Perez arrived that the CI's

residence to pick him up. Secret Service agents listened to the conversation between the two men. Perez and the CI discussed procuring a credit card skimmer for the CI's girlfriend to use while waitressing. Perez noted that the names of card holders that are magnetically encoded on a credit card regularly appear on receipts. Perez then gave the CI a counterfeit credit card with the CI's name physically imprinted on the card and directed him to use the card to buy $20 worth of gasoline. After the CI purchased the gasoline, Secret Service agents arrested Perez and recovered an additional nine counterfeit credit cards that were physically imprinted with the CI's name. Subsequent investigation by the Secret Service discovered that each of the ten cards recovered was magnetically encoded with a different credit card number and account holder name. Each of these ten credit card accounts was an active account issued to a real person. Secret Service agents ultimately determined that each of the ten credit card accounts had been compromised by a waitress in a Coconut Grove restaurant. The waitress admitted that she used a credit card skimmer and provided credit card numbers to Perez.

A Presentence Investigation Report ("PSR") was prepared.[1] The probation officer calculated a base offense level of six for Count One, pursuant to U.S.S.G. § 2B1.1(a)(2). The probation officer determined that Perez was responsible for a

---

[1]Unless otherwise noted, all references to the PSR are to the revised PSR.

3

total loss amount of $51,021.01, resulting in an increase of six in the offense level under U.S.S.G. § 2B1.1(b)(1)(D). A two-level decrease for acceptance of responsibility was applied under U.S.S.G. § 3E1.1(a). Perez's final offense level was 10, with a criminal history category of 1, yielding a sentence range under the Sentencing Guidelines of 6 to 12 months' imprisonment for Count One. Count Two, the aggravated identity theft charge, carried a mandatory consecutive two-year prison term. 18 U.S.C. § 1028A.

Both the government and Perez filed objections to the PSR. The government objected to the probation officer's failure to assess a two-level enhancement under U.S.S.G. § 2B1.1(b)(10). That section provides for a two-level increase if the offense involved "(A) the possession or use of any (i) device-making equipment" or "(B) the production or trafficking of any (i) . . . counterfeit access device." U.S.S.G. § 2B1.1(b)(10). The government acknowledged that Application Note 2 to U.S.S.G. § 2B1.6, which governs aggravated identity theft convictions under 18 U.S.C. § 1028A, precludes the application of a two-level increase in certain circumstances, but argued that Application Note 2 did not prohibit an increase in this case for two reasons. First, because Perez gave device-making equipment (the credit card skimmer) to the CI's girlfriend, Ivonne Calvo-Gonzalez, an increase under § 2B1.1(b)(10)(A)(i) was appropriate. Second, the

4

government argued that Application Note 2 to § 2B1.6 did not preclude the application of § 2B1.1(b)(10)(B)(i) because the production of counterfeit credit cards was at issue.

In his objection to the PSR, Perez opposed the two-level enhancement. He argued that there was no evidence that he ever possessed device-making equipment or produced any counterfeit credit cards himself. Perez objected to the description of offense conduct in paragraph six of the PSR, which stated that Perez and the CI discussed procuring a skimmer for Calvo-Gonzalez. Perez also objected to paragraph 14 of the PSR, dealing with Role Assessment, in which the probation officer determined that Perez was involved in the entire scheme and was responsible for the entire loss amount of $51,021.01.[2] Perez specifically objected to the sentence in paragraph 14 which states that Perez and Jose Acosta-Oropesa, who pled guilty in a separate case, both provided the credit card skimmer to Calvo-Gonzalez. Finally, Perez objected to the loss calculation on the basis that the calculation was based on the use of other cards by Acosta-Oropesa or someone else, but not by Perez himself.

At sentencing, Perez objected to the sentence in paragraph six of the PSR which stated that he and the CI discussed procuring a credit card skimmer for

---

[2]This statement is contained in paragraph 16 of the revised PSR. It was contained in paragraph 14 of the original PSR.

Calvo-Gonzales to use while waitressing. The government responded that the district court could strike that statement from the PSR because the government would rely on other testimony to establish the conspiracy for sentencing purposes. The district court struck the sentence from the PSR.

Perez reiterated his objection to the Role Assessment portion of the PSR in which the probation officer determined that Perez was responsible for the entire loss amount. Perez stated that Acosta-Oropesa provided the skimmer, not Perez. The government responded that, as testimony would show, Calvo-Gonzalez told Special Agent Bryan McCadden that while she was initially given the skimmer by Acosta-Oropesa, on subsequent occasions she would meet with both Perez and Acosta-Oropesa and both of them would hand her the skimmer. The government stated that the hearsay testimony was corroborated by the physical description of the car that Calvo-Gonzalez entered to deliver the skimmer, which was the same vehicle in which Perez was arrested. The government also noted that Calvo-Gonzalez had identified Perez in a picture, and that Acosta-Oropesa implicated Perez as one of his co-conspirators. Upon consideration of this information and the factual proffer previously agreed to by Perez, the district court found that there was sufficient evidence to conclude that Perez was responsible for the entire loss amount of $51,021.01.

The government then made its objection to the probation officer's failure to assess a two-level increase under U.S.S.G. § 2B1.1(b)(10). The government conceded that the Sentencing Guideline provision for aggravated identity theft instructed against imposing a two-level enhancement under § 2B1.1(b)(1) for the trafficking of a counterfeit access device because that punishment was already factored into the sentence for Count Two, the aggravated identity theft charge. The government argued, however, that the two-level enhancement was allowed in this case because Perez's conduct involved the production of counterfeit access devices (credit cards) and the use of device-making equipment (the credit card skimmer).

The district court asked the government to detail the evidence supporting its contention that Perez produced the counterfeit credit cards. The government outlined the sequence of events as follows. First, Calvo-Gonzalez skimmed the credit card numbers. Second, she gave those card numbers to Perez and Acosta-Oropesa. Third, Perez was arrested with counterfeit credit cards, which were encoded with the information that was stolen by Calvo-Gonzalez, and which had the CI's name physically imprinted on them. The government argued that this evidence proved that cards were produced or manufactured because Calvo-Gonzalez started out with just account numbers, but in the end there were actual

credit cards, magnetically encoded with the CI's name. The government contended that for Calvo-Gonzalez, Perez, and Acosta-Oropesa to start with numbers and end with a physical card, there had to be production. The government also pointed out that the two-level enhancement could be imposed if the district court found either that device-making equipment was used or counterfeit cards were produced. The government stated that either prong could be applied in this case, as counterfeit credit cards were produced and a credit card skimmer was used.

Perez argued in response that there was insufficient evidence for the district court to find that he gave a skimmer to Calvo-Gonzalez or that he produced any of the counterfeit credit cards. He stated that there was no evidence showing that he was the person who manufactured the cards or possessed any equipment for their manufacture. While Perez admitted to paying Acosta-Oropesa to manufacture the counterfeit credit cards, he denied producing them himself. He also denied having any contact with Calvo-Gonzalez.

The government called Agent McCadden as a witness. He testified that Calvo-Gonzalez told him that sometimes she would return the skimmer to Perez and Acosta-Oropesa at the restaurant where she worked, and sometimes she would travel to meet them. When she met Perez and Acosta-Oropesa at the restaurant,

8

Calvo-Gonzalez would get into either Perez's or Acosta-Oropesa's vehicle and return the skimmer to them. Agent McCadden testified that Calvo-Gonzalez told him that Perez and Acosta-Oropesa worked together, and she saw no difference in their roles. Further, Calvo-Gonzalez informed Agent McCadden that she and Acosta-Oropesa continued skimming credit card numbers even after Perez was arrested in order to obtain money to pay Perez's bond.

Relying on the First Circuit case of United States v. Sharapka, 526 F.3d 58 (1st Cir. 2008), and the Eighth Circuit case of United States v. Jenkins-Watts, 574 F.3d 950 (8th Cir. 2009), the government argued that the district court should apply the § 2B1.1(b)(10) enhancement either because Perez possessed device-making equipment or because the production of counterfeit access devices was part of the offense. The government asserted that it had proven both of these grounds. Perez argued in response that Application Note 2 to § 2B1.6 prohibited the enhancement, and also that there was insufficient evidence to show that he possessed device-making equipment or produced counterfeit credit cards.

Following the First and Eighth Circuits, the district court adopted the two-level enhancement under § 2B1.1(b)(10). The district court found that the increase applied for both reasons advanced by the government as the offense involved the possession of device-making equipment and the production of

9

counterfeit access devices. Thus, the total offense level became 12, resulting in a Sentencing Guideline range of 10 to 16 months' imprisonment for Count One. The district court sentenced Perez to a term of 12 months on Count One and the statutorily mandated consecutive term of 24 months on Count Two, for a total of 36 months' imprisonment.

## II.

Perez argues on appeal that the district court erred in assessing the two-level enhancement under § 2B1.1(b)(10). He contends that Application Note 2 to § 2B1.6 precludes the imposition of § 2B1.1(b)(10)'s specific offense characteristic enhancement in cases where the defendant's sentence is subject to a two-year consecutive term of incarceration pursuant to 18 U.S.C. § 1028A. Perez argues that the district court erred in assessing the enhancement under the plain language of the Sentencing Guidelines. "We review the district court's interpretation of the Sentencing Guidelines _de novo_ and accept its factual findings unless clearly erroneous." United States v. Barner, 572 F.3d 1239, 1247 (11th Cir. 2009) (citation omitted).

Section 2B1.6 states that if a defendant is convicted of aggravated identity theft under 18 U.S.C. § 1028A, the Guideline sentence is the term of imprisonment required by statute. Application Note 2 to § 2B1.6 provides:

> If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for the transfer, possession, or use of a means of identification when determining the sentence for the underlying offense. A sentence under this guideline accounts for this factor for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). "Means of identification" has the meaning given that term in 18 U.S.C. § 1028(d)(7).

U.S.S.G. § 2B1.6 cmt. n. 2.

The First Circuit has determined that § 2B1.6 does not always prohibit the application of a § 2B1.1(b)(10) enhancement. In Sharapka, 526 F.3d at 59, the defendant was sentenced to 121 months' imprisonment after he pled guilty to a 13-count information alleging identity theft, counterfeiting, and mail fraud. The district court imposed a two-level enhancement pursuant to § 2B1.1(b)(10)(A) for possession of device-making equipment. Id. On appeal, the defendant asserted that the enhancement for possession of device-making equipment resulted in impermissible double counting, and argued that the mandatory consecutive sentence for his aggravated identity theft conviction precluded application of the two-level increase for specific offense characteristics under § 2B1.1(b)(10). Id. at 62.

The First Circuit reviewed Application Note 2 to § 2B1.6 and found that the

section only applied to certain enhancements under § 2B1.1(b)(10). The court determined that an enhancement under § 2B1.1(b)(10)(C)(i) - the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification - would be precluded by § 2B1.6. Id. However, the district court imposed the enhancement because the defendant possessed device-making equipment, which implicates § 2B1.1(b)(10)(A)(i), not (C)(i). The First Circuit held that because § 2B1.6 does not cover the possession of device-making equipment, the district court acted appropriately in applying both the mandatory minimum under § 2B1.6 and the two-level enhancement under § 2B1.1(b)(10)(A)(i). "To hold otherwise would result in an expansion of the application of § 2B1.6 beyond the specific characteristics identified by the Guidelines in the explanatory text." Id.

The Eighth Circuit has also determined that § 2B1.6 only applies to certain enhancements under § 2B1.1(b)(10). In Jenkins-Watts, 574 F.3d at 961, one defendant was convicted of thirteen counts of aggravated identity theft in violation of 18 U.S.C. § 1028A. At sentencing, the district court applied an enhancement under § 2B1.1(b)(10). On appeal, the defendant argued that § 2B1.6 disallowed the § 2B1.1(b)(10) enhancement. Id.

The Eighth Circuit reviewed § 2B1.6 and determined that it does not

12

exclude all conduct described in § 2B1.1(b)(10). "For example, the production of a counterfeit access device or authentication feature is not conduct encompassed by the prohibition on double counting in the commentary to § 2B1.6." Id. at 962. The court found that the defendant qualified for the § 2B1.1(b)(10) enhancement because he produced counterfeit driver's licenses with realistic authentication features, conduct that § 2B1.6 does not exclude. Id.[3]

We agree with the First and Eighth Circuits that Application Note 2 to § 2B1.6 does not prohibit the application of all the § 2B1.1(b)(10) specific offense characteristics. The plain language of Application Note 2 provides that only those

---

[3]While not binding on us, we note that a panel of this Court recently addressed Application Note 2 to § 2B1.6 as applied to the § 2B1.1(b)(10) specific offense characteristics. United States v. Doguer, No. 10-12399 (11th Cir. 2011) (unpublished opinion). The defendant in Doguer argued that the district court erred by imposing a two-level enhancement under § 2B1.1(b)(10) because he was also subject to the mandatory two-year consecutive sentence from an aggravated identity theft charge. He relied on Application Note 2 to § 2B1.6 to support his position. Id. at *2.

The Court reviewed the issue for plain error and determined that the defendant could not establish that the district court plainly erred in its application of the two-level enhancement under § 2B1.1(b)(10). Id. The Court noted that the limitation on application of specific offense characteristics under Application Note 2 to § 2B1.6 extends only to "transfer, possession, or use of a means of identification," such as a card, code, account number, or PIN. Id. As the offense conduct in the case involved both the use of device-making equipment and the production of counterfeit debit cards, and not the "transfer, possession, or use" of the debit cards, the Court determined that the "plain language of the relevant guidelines, commentary, and referenced statutes support the district court's application of § 2B1.1(b)(10) in this case." Id.

13

specific offense characteristics that are based on the "transfer, possession, or use of a means of identification" cannot be applied. The district court determined that the two-level enhancement was appropriate because the offense involved the possession or use of device-making equipment and because the offense involved the production of counterfeit access devices. The enhancement was not based on the "transfer, possession, or use of a means of identification." We find that the district court did not err in its application of the Sentencing Guidelines, and the two-level enhancement under § 2B1.1(b)(10) was appropriate.

### III.

Perez next argues that there was insufficient evidence to support the district court's finding that he used device-making equipment. However, we can affirm the enhancement without addressing that issue in detail. This is because the district court did not base the enhancement just on the use of device-making equipment. It also found that an enhancement was appropriate because Perez produced counterfeit access devices. Perez has not challenged the enhancement based on the production of counterfeit access devices, and therefore has abandoned any argument that this alternative ground for the enhancement was erroneous. See United States v. Gupta, 572 F.3d 878, 887 (11th Cir. 2009) (holding that the government abandoned any argument about sentences by not

14

addressing them in its brief). Thus, even if we found that there was not sufficient evidence to support the enhancement based on the use of device-making equipment, Perez has not shown how the district court erred in applying the § 2B1.1(b)(10) enhancement for the production of counterfeit credit cards. Accordingly, we affirm the district court on this point.

## IV.

Perez's final argument is that the district court erred in holding him accountable for the total loss amount of $51,021.01.

Perez pled guilty to possessing ten counterfeit credit cards. At sentencing, he was held accountable for all 60 counterfeit credit cards that were involved in the skimming operation. Perez argues on appeal that the evidence was insufficient to connect him to the entire operation. Perez does not dispute that the total loss amount caused by the credit card skimming operation was $51,021.01, but argues that the total amount is not attributable to him as relevant conduct. We review the calculation of losses by the district court for clear error. United States v. Naranjo, 634 F.3d 1198, 1206 (11th Cir. 2011).

Proper calculation of the Guidelines requires consideration of "all relevant conduct," not merely charged conduct. United States v. Hamaker, 455 F.3d 1316, 1336 (11th Cir. 2006). Relevant conduct includes "all acts and omissions . . . that

were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). Whether or not charged as a conspiracy, relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). This includes acts and omissions "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." Id. A defendant is accountable under this provision for the conduct of others that was both "(i) in furtherance of the jointly undertaken criminal activity; and (ii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3, cmt. n. 2. The government bears the burden of proving the loss attributable to relevant conduct with reliable and specific evidence. United States v. Dabbs, 134 F.3d 1071, 1081 (11th Cir. 1998).

We find that the district court did not err in holding Perez responsible for the total loss amount of $51,021.01. The government presented evidence at the sentencing hearing to prove the relevant conduct, and the district court found that evidence to be reliable. Perez has not shown that evidence to be unreliable or unbelievable on its face. Upon review of the record, we cannot say that the district court's finding was clearly erroneous.

**AFFIRMED.**

16